# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO LEON, | 1:09-cv-00445-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction of aggravated mayhem with use of a deadly weapon. Petitioner is serving a sentence of 7 years to life, plus a one year enhancement.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Board of Parole Hearings (Board) 2006 decision finding him unsuitable for release.

Petitioner filed a state petition for writ of habeas corpus in the Los Angeles County Superior Court on May 22, 2007. The superior court denied the petition in a reasoned decision findings some evidence to support the Board's decision.

Petitioner then filed a habeas petition in the California appellate court. The petition was denied without comment or citation. Petitioner also filed a habeas petition in the California Supreme Court which was also summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on February 24, 2009. Respondent filed an answer to the petition on June 22, 2010. Petitioner did not file a traverse.

## SUMMARY OF FACTS

Petitioner and Maria Casteon divorced in October of 1989 following an 11-year marriage during which they had two children together. During the divorce process, Petitioner had told Casteon that in his mind they were still husband and wife and he had the same rights with her. He had threatened that if she was not going to be his, she was not going to be anyone else's and he would kill her, the children, and himself. Petitioner had permission to visit the children on the weekends, but otherwise, lacked permission to visit the residence. On July 2, 1990, Maria Casteon spoke to Petitioner. She bought a new stove and wanted to dispose of the old one, and Petitioner wanted her to get rid of it in the next weekend. That evening while Casteon was away, Petitioner went to her home without telling her. Casteon had gone dancing with a male friend after 9:00 p.m. leaving her three youngest children in the care of her 13-year-old daughter, Maria. She arrived at home at approximately 1:45 a.m. and found Petitioner sitting in the kitchen with the lights off. Petitioner stood up and asked, now what? He started pacing around, asking questions, and insisted that she tell him who she had been with. She refused and said they agreed that she would have her own life. Casteon's daughter heard Petitioner threaten Casteon stating, "[t]ell me who it is or else we're both going to die." Petitioner said, "[t]he children were alone, where were you?" He then grabbed a hammer but put it away after she asked whether he was going to kill her. When Casteon would not tell him the name of her date, Petitioner sat down and started to cry. Casteon went into the bedroom and thought she heard Petitioner leave after using the restroom. However, Petitioner opened the bedroom door a moment later and entered. He then picked up the telephone and told her he was going to take the children away from her. After he hung up the phone, he ran to the kitchen obtained a knife and returned. Petitioner approached Casteon and she screamed, "No don't do it." Petitioner said, "This is where you are going to

2

end." Petitioner then stabbed her quickly and repeatedly with the knife. He grabbed her feet and lifted them trying to stab her in her private area. She turned face down to deter him from doing so which caused her to be stabbed in the back. When Petitioner cut Casteon on her throat, she pushed him away with her feet and legs, and he left through the kitchen.

Casteon was taken to a medical trauma center in critical condition. She had sustained 12 stab wounds and lost a lot of blood. She had one stab wound in the neck, three in the back, two in the buttocks, one in the left upper abdomen, and five in the left arm. She needed to be resuscitated with a tube in her windpipe and her left kidney and part of her colon had to be removed. A colostomy was required because of the extensive laceration of her colon and she suffered a collapsed left lung. There was also extensive damage to the muscles and tendons of her left arm with the limited use of her left hand. She initially remained in the hospital for 15 days and returned for another eight days for further surgery to repair her colon. She was left scarred and in great pain.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

1  Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a
2  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the
3  petition is not challenging [her] underlying state court conviction.'").
4      The instant petition is reviewed under the provisions of the Antiterrorism and Effective
5  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,
6  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
7  adjudication of the claim "resulted in a decision that was contrary to, or involved an
8  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
9  of the United States" or "resulted in a decision that was based on an unreasonable determination
10 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
11 § 2254(d); see Lockyer, 538 U.S. at 70-71;Williams, 529 U.S. at 413.
12     "[A] federal court may not issue the writ simply because the court concludes in its
13 independent judgment that the relevant state court decision applied clearly established federal
14 law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.
15 A federal habeas court making the "unreasonable application" inquiry should ask whether the
16 state court's application of clearly established federal law was "objectively unreasonable."  Id. at
17 409.     Petitioner has the burden of establishing that the decision of the state court is contrary to
18 or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.
19 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
20 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
21 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
22 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
23 II.    Review of Petition
24     There is no independent right to parole under the United States Constitution; rather, the
25 right exists and is created by the substantive state law which defines the parole scheme.  Hayward
26 v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,
27 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing
28 Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.

Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
>   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>   (C) The victim was abused, defiled or mutilated during or after the offense.
>   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

    (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

    (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

    (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

    Section 2402(d) sets forth the circumstances tending to show suitability which include:

    (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

    (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

    (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

    (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

    (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

    (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

    (7) Age. The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

    The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be

supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. <u>Last Reasoned State Court Decision</u>

In the last reasoned decision of the Los Angeles County Superior Court, the petition was denied based on the following:

> The Board found that the commitment offense was "especially cruel and callous" in that the offense demonstrated a callous disregard for human suffering and the victim was abused and mutilated. Cal. Code Regs., tit. 15, § 2402(c)(1)(C) and (1)(D). The court finds that there is some evidence in the record to support this finding. To demonstrate an "exceptionally callous disregard for human suffering" the offense in question must have committed in a more aggravated or violent manner than that ordinarily shown in the commission of aggravated mayhem. *In re Scott* (2004) 119 Calliope.4th 871, 891. Aggravated mayhem requires the defendant to intentionally cause permanent disability or disfigurement, or to deprive the victim of a limb, organ, or member of his or her body, under circumstances manifesting extreme indifference to the physical or psychological well being of the victim. Penal Code § 205.
>
> In this case, the petitioner's offense was more than the minimum necessary for a conviction of aggravated mayhem. The record shows that the victim suffered twelve stab wounds–one in the neck, three in the back, two in the buttocks, one in the left upper abdomen, and five in the left arm. The victim was taken to a medical trauma center in critical condition and had to be resuscitated. Her left kidney and part of her colon was removed. A colostomy was required due to extensive laceration of her colon and she suffered a collapsed lung. There was also extensive damage to the muscles and tendons of her left arm, which left her with limited use of her left hand. The Board's finding that the commitment offense was carried out in an especially cruel and callous manner, a factor tending to show unsuitability for parole, is supported by some evidence.
>
> The Board's finding that petitioner's prior record of violence makes him unsuitable for parole is supported by evidence in the record showing that petitioner was convicted in 1989 for inflicting corporal injury on his spouse. Cal. Code Regs., tit. 15, § 2402(c)(2). The Board further noted that petitioner had failed to profit from society's previous attempts to correct his criminality. The record show that petitioner was on adult probation for his conviction of spousal abuse when he was arrested for the commitment offense. Thus, the record contains some evidence that petitioner was undeterred by the earlier correctional intervention and was unsuccessful at correcting his criminal conduct.
>
> The Board's finding that petitioner's unstable social history tends to shows unsuitability for parole is also supported by some evidence. Cal. Code Regs., tit. 15, § 2402(c)(3). Petitioner's conviction for spousal abuse is evidence of his tumultuous relationship with his wife.
>
> The Board's finding that petitioner lacks realistic parole plans is also

supported by some evidence in the record. Cal. Code Regs., tit. 15, §2402(d)(8). Petitioner, who has an INS hold and will most likely be deported to Mexico, failed to submit documentation supporting his employment and residence plans in Mexico. Petitioner submitted one letter signed by an official of the City of Jacona, Michoacan, confirming that petitioner's family owns property in the city, however, there was no documentation regarding who is currently living on the farm, employment opportunities, or what type of support system would be available to him in general.

The Board also noted that petitioner's psychological reports were not totally supportive of petitioner's release. Thus, the court finds some evidence to support the Board's finding that petitioner poses an unreasonable risk of danger to society, and, is therefore, unsuitable for parole.

B.   2006 Board Hearing

At the 2006 hearing, the Board found Petitioner unsuitable for release based on the circumstances of the commitment offense, prior criminal history, unstable social history, unfavorable psychological report, and uncertain parole plans.

The commitment offense was undoubtedly carried out in a dispassionate and cruel manner. While drunk and outraged, Petitioner stabbed his ex-wife multiple times while his children were present causing severe injury. Petitioner entered his ex-wife's apartment without her permission when she was not home. When she returned he confronted her and argued about her whereabouts. After the victim retreated to her bedroom, Petitioner attacked her and stabbed her several times, once in the neck, three in the back, two in the buttocks, one in the left upper abdomen, and five in the left arm. She needed to be resuscitated with a tube in her windpipe and her left kidney and part of her colon had to be removed. A colostomy was required because of the extensive laceration of her colon and she suffered a collapsed left lung. There was also extensive damage to the muscles and tendons of her left arm with the limited use of her left hand. She initially remained in the hospital for 15 days and returned for another eight days for further surgery to repair her colon. As the Board noted, Petitioner essentially attempted to mutilate his ex-wife. Given these circumstances, the commitment offense was carried out in a dispassionate and callous manner. Cal. Code Regs. tit. 15, § 2402(c)(1).

Petitioner was previously convicted of corporal injury to a spouse for which he was on probation at the time of the commitment offense. This was properly considered by the Board in

determining if Petitioner was suitable for release. Cal. Code Regs. tit. 15, § 2402(c)(2). Such conviction supports the Board's finding that Petitioner had an unstable social history as evidenced by the violent relationship with his ex-wife. Cal. Code Regs. tit. 15, § 2402(c)(3).

The most recent psychological report was not totally supportive of Petitioner's release. Dr. Charles Silverstein found that Petitioner exhibited "limited ability for insight" into the causative factors of the commitment offense. In addition, Dr. Silverstein opined that when "[c]ompared to a level two prison population, his risk of dangerousness would appear to be well below average. I would estimate his risk of dangerousness compare to the average as near average with the caveat that he abstains from all forms of substance abuse." The Board found this assessment inconclusive in that it was compared to the "average citizen as near average," and there was no supporting statement of the meaning.

The Board found that Petitioner's parole plans were uncertain and raised concern regarding Petitioner's ability to abide by the laws upon release. An ICE hold is placed against Petitioner to return to his native country of Mexico. Although Petitioner provided a letter from an official in Mexico indicating that his family had a farm and housing, there was no evidence of any support there. In addition, Petitioner merely indicated that there were a number of substance abuse programs in Mexico but did not provide any specific details of the programs to assure the Board that he could continue to abstain from alcohol abuse as advised by the psychologist. Given that alcohol played a major role in the commitment offense, the fact that Petitioner has not taken adequate steps to mitigate the high risk factor for relapse and reoffense as set forth in the psychological assessment, it was reasonable for the Board to find that Petitioner continues to pose a current risk of danger to society. Although this finding cannot alone provide a basis for finding Petitioner unsuitable, it can be considered as one factor, among others, to find unsuitability. Cal Code Regs. tit. 15, § 2402(d)(8).

The Board considered factors in support of suitability. Petitioner was commended for his work reports in Furniture Factor, continued participation in Alcoholics Anonymous, completion of Anger Management, and discipline free record. Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. In light of

the heinous commitment offense, prior violent history, unstable social history, inconclusive psychological evaluation, and inadequate parole plans, the state courts' determination that there was some evidence to support the Board's 2006 decision was not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 20, 2010**          /s/ **Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE